**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**


HERBERT LEWIS, JR.              )
                                          )
        Petitioner,             )
                                            )
v.                                   )               **Case No. 06-CV-28-JHP**
                                          )
UNITED STATES OF AMERICA,     )
                                          )
        Respondent,           )


## ORDER AND OPINION

Before the Court are Petitioner Herbert Lewis, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 1), the Government's Response to Petitioner's 28 U.S.C. § 2255 Motion (Docket No. 3), Petitioner's Memorandum and Brief in Support (Docket No. 8), the Government's Response to Supplemental Pleading (Docket No. 10), Petitioner's Reply to Government's Response (Docket No. 13), Petitioner's Supplement (Docket No. 20), Petitioner's Second Supplement (Docket No. 27), and the Government's Response to Herbert Lewis, Jr.'s Supplement to his 2255 Position (Docket No. 31). Lewis alleges that he received ineffective assistance of counsel for which he is entitled to relief. For the reasons cited herein, Lewis' motion is DENIED.

### Background

On September 19, 2002, a grand jury in the Eastern District of Oklahoma returned an indictment charging Petitioner Herbert Lewis, Jr., with two counts of possession with intent to distribute cocaine in violation of in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Count One arose from a traffic stop that occurred on February 9, 2002, in Bryan County, Oklahoma,

1

while Lewis and a companion, Sherman Brown, were transporting a large quantity of cocaine base to Tulsa, Oklahoma. Count Two arose from Lewis' subsequent arrest on April 17, 2002, in Okmulgee County, Oklahoma, for possession of a separate quantity of cocaine base. In addition, on November 22, 2002, the Government filed an information pursuant to 18 U.S.C. § 851 setting forth Lewis' prior felony drug conviction for enhancement purposes.

As originally drafted, Count Two of the indictment charged that "[o]n or about April 17, 2002...Lewis...did knowingly and intentionally possess with intent to distribute 56.6 grams or more of a mixture or substance containing a detectable amount of cocaine base, commonly referred to as 'crack' cocaine...in violation of Title 21, United States Code, Sections 841(a)(1) and 841[(b)](1)[(A)](iii)." On November 26, 2002, however, the Government filed a motion to redact the indictment, seeking to remove the drug quantity provision contained therein. At the pretrial conference, Lewis' court-appointed counsel raised no objection to the Government's motion, instead noting that he believed the redaction to be in the best interests of Lewis. Accordingly, the Court granted the Government's motion.

After a two-day jury trial ending on December 3, 2002, Lewis was convicted on both counts. On March 3, 2003, the Court sentenced Lewis to 240 months imprisonment in the custody of the Bureau of Prisons as to each count, with said terms of imprisonment to run concurrently. Following release from imprisonment, Lewis was ordered to serve an additional ten years on supervised release. Further, Lewis was ordered to pay a $200.00 special assessment and a $2,500.00 fine. The Judgment and Commitment was filed on March 12, 2003. Following his conviction, Lewis filed a direct appeal. On May 18, 2004, the Tenth Circuit Court of Appeals affirmed his conviction. *United States v. Lewis*, 97 Fed. Appx. 875 (10th Cir. 2004) (unpublished

opinion).

On January 19, 2006, Lewis initiated this proceeding by filing a motion to vacate pursuant to 28 U.S.C. § 2255. After receiving the Government's responses, the Court set the motion for an evidentiary hearing and appointed counsel to represent Lewis in this matter. The Court conducted the evidentiary hearing on July 21, 2006. At the conclusion of the hearing, the Court directed the parties to submit supplemental briefs.

In his original motion and various supplemental pleadings, Lewis asserts generally that he was denied effective assistance of counsel based upon trial counsel's failure (1) to object to the redaction of the drug quantity from Count Two of the Indictment, (2) to object to the Presentence Report's use of guidelines for "cocaine base" or "crack," rather than "cocaine," in calculating Lewis' sentence, (3) to object to the Government's introduction of hearsay statements by Sherman Brown at trial, and (4) to investigate Lewis' case, call witnesses, or offer evidence on Lewis' behalf. The Court addresses these claims below.

## Discussion

As an initial matter, the Court notes that the failure to raise an issue on direct appeal generally bars a petitioner from subsequently raising the same issue on collateral review pursuant to 28 U.S.C. § 2255 unless the petitioner can demonstrate "both good cause for failing to raise the issue earlier, and that the court's failure to consider the claim would result in actual prejudice to his defense," *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004); *see United States v. Frady*, 456 U.S. 152, 167 (1982), or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Nevertheless, the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does

not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Because Lewis' various pleadings appear to assert only claims for ineffective assistance of counsel, Lewis is not procedurally barred from bringing those claims pursuant to a § 2255 motion.

Ineffective assistance claims are reviewed under the framework set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prove ineffective assistance of counsel at either the trial or appellate stage, a defendant must show, by a preponderance of the evidence, that (1) counsel's performance fell below an objective standard of reasonableness, and (2) prejudice, such that there is a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." *Young v. Sirmons*, 486 F.3d 655, 674 -675 (10th Cir. 2007); *see Strickland*, 466 U.S. at 687. Courts are free to address the performance and prejudice components in any order and need not address both where a defendant fails to make a sufficient showing of one. *Strickland*, 466 U.S. at 697. "[A] failure to prove either one is dispositive." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

Lewis first asserts that he was denied effective assistance of counsel based upon trial counsel's failure to object to the redaction of Count Two of the indictment. As Lewis notes, pursuant to the Fifth Amendment's Grand Jury Clause, with certain exceptions not relevant here, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." Thus, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-216 (1960). Lewis contends that redacting the drug quantity from Count Two of the indictment broadened the indictment by "making it easier for the

government to convict [Lewis]." (Pet'rs Second Supp. at 3.) Moreover, Lewis contends that he was prejudiced by the redaction because "[t]he Presentence Report inserted a drug amount attributable to [Count Two], and that figure was used in [the] calculation of [Lewis'] sentence." (*Id*.) Accordingly, Lewis argues that "[t]he government gained the unfair advantage of not having to prove any drug amount at trial, but then being able to use a drug amount at sentencing." (*Id*.)

There are two acknowledged exceptions to the rule that the language of an indictment may not be altered except by resubmission to the grand jury. First, "the court may change an indictment as to matters of form or surplusage." *United States v. Hall*, 536 F.2d 313, 319 (10th Cir. 1976). Second, the court may "amend[]...an indictment to remove factual allegations that the evidence fails to support, so long as nothing is added to the indictment, the remaining allegations still charge the same offense as the original indictment, and the defendant cannot prove that the deleted language somehow prejudiced him in the preparation of his defense." *United States v. Williams,* 229 F. Supp. 2d 624, 628 (E.D. Tex. 2002) (citing *Salinger v. United States*, 272 U.S. 542, 548 (1926), *Ford v. United States*, 273 U.S. 593, 602 (1927), and *United States v. Prior*, 546 F.2d 1254 (5th Cir.1977)). Thus, the court in *Williams* permitted the redaction of the drug quantity of "1000 kilograms or more" from the indictment where "[t]he evidence did not support this quantity," "the indictment still allege[d] an offense under [the relevant statute pursuant to which the defendant had been charged]," and "Defendant could not show that the deleted language somehow prejudiced him in his defense." *Id*. at 628-629. Indeed, counsel for Lewis relied upon the factual similarities between the present case and *Williams* in making his determination that redaction of the indictment, rather than requiring that the Government obtain a superseding indictment, served his clients interests, as it would allow Count Two to go to the jury

without a specific drug quantity, which could lead to an increased sentencing range under 21

U.S.C. § 841. (Pet'rs Second Supp. at 15-16.) Pursuant to this authority, and based upon the

record in this case, the Court therefore finds that Lewis has not established that counsel's conduct

in acquiescing to the Government's motion was deficient.

Moreover, Lewis has failed to establish that he was prejudiced by the redaction. First, the

Court notes that pursuant to Rule 31(c)(1) of the Federal Rules of Criminal Procedure, "[a]

defendant may be found guilty of...an offense necessarily included in the offense charged."

Possession with intent to distribute less than five grams or more of a mixture or substance

containing a detectable amount of cocaine base, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), would

appear to be a lesser included offense of either possession with intent to distribute in excess of

fifty grams or more of such a substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). *See United

States v. Scott*, 243 F. Supp. 2d 97, 104 (D. Del. 2003). Lewis could therefore have been

convicted of the same offense charged in redacted Count Two, even if the Government's motion

been denied.

Likewise, Lewis' argument that he was prejudiced by the Government's use of the drug

quantity associated with Count Two in calculating his sentence is without merit. Although

paragraph 18 of the Presentence Report does combine the "9.7 grams of pure cocaine base" seized

in connection with Count Two with the cocaine base seized in relation to Count One to reach the

conclusion that "the total quantity of drugs to be used in the calculation of the guidelines is

182.676 grams of cocaine base" (Presentence Report at 3), the Court notes that in determining

Lewis' base offense level, paragraph 24 of the Presentence Report states that "the base offense

level for offenses involving at least 150 [grams] but less than 500 [grams] of cocaine base is

thirty-four (34)." (*Id.* at 4); *see* U.S.S.G. §§ 2D1.1(a)(3) and (c)(4). Because the amount of cocaine base possessed by Lewis in connection with Count One—227.60 grams at 76% purity—already exceeded the 150 grams required for a base offense level of 34, and the inclusion of the additional 9.7 grams in relation to Count Two did not alter the base offense level used in determining Lewis' sentence. Accordingly, the Court finds that Lewis has failed to "show that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different." *Orange*, 447 F.3d at 797.

Lewis next alleges that trial counsel was ineffective in failing to object to his being sentenced for possession of "cocaine base," rather than "cocaine." According to Lewis, "[t]he jury's verdict found [Lewis] guilty of possession of cocaine, not cocaine base." (Pet'rs Second Supp. at 3.) Lewis contends that trial counsel's failure "to argue against the imposition of a higher sentence than what the verdict actually called for, warrants a finding that [Lewis'] counsel was ineffective." The Court notes, however, that the Tenth Circuit addressed this issue on direct appeal, rejecting Lewis' argument that "the district court erred in calculating his base offense level under U.S.S.G. § 2D1.1 because the court treated all of the drugs at issue as containing cocaine base." *Lewis*, 97 Fed. Appx. at 878. Given the Tenth Circuit's conclusion that this Court correctly calculated Lewis' sentence using the guidelines for cocaine base, Lewis' related claim that counsel was ineffective in objecting to the Court's use of such guidelines in calculating his sentence is without merit.

Lewis also alleges that counsel was ineffective in failing to object to the testimony of Texas Highway Patrol Officer Kameron Pierce, who initiated the vehicle stop leading to Count One of the indictment, concerning statements made by Sherman Brown indicating that the

cocaine base discovered at the scene belonged to both of them. In particular, Lewis cites the

following exchange between counsel for the Government and Officer Pierce:

> Q:  Now, did you have occasion to talk to him about the narcotics that you found on that date?
>
> A:  Yes, I did.
>
> Q.  What did he say?
>
> A.  I asked him where they bought the crack and he stated that Sherman [Brown] bought the crack for about 4500 to $5,000.00. He stated that they were transporting it to Tulsa. At that point, I was talking to Mr. Lewis and Mr. Smith in the interview room and Mr. Smith advised that the crack belonged to them.
>
> Q:  Let me stop you.
>
> A:  Ok.
>
> Q:  Whose [sic] Mr. Smith?
>
> A:  I'm sorry, Mr. Brown. It has got a typo. *Mr. Brown advised that the crack belonged to them and they were going to be delivering it to another party.* Some of the crack was theirs, but most of it was going to be delivered to another party.
>
> Q:  And were both parties present when, I guess, Mr. Brown made that statement?
>
> A:  Yes.
>
> Q:  Did the defendant at any time say, no, that's not true?
>
> A:  No.

(Tr. Trans. at 53.) Lewis notes that trail counsel "failed to object and argue that [Officer Pierce's]

statement was hearsay, which deprived [Lewis] of his Sixth Amendment Constitutional right to

confront [his accuser]." Furthermore, Lewis argues that "[t]here exists no logical reason to allow

the introduction of this evidence...[c]ounsel should have objected to its introduction, and it is

evidence of [counsel's] ineffectiveness that no objection was lodged." (Pet'rs Second Supp. at 2.)

Again, however, even if the Court assumes that counsel erred in failing to object to Officer Pierce's testimony concerning Brown's out-of-court statements, Lewis has failed to demonstrate "a reasonable probability that the outcome of the trial would have been more favorable to him, absent the errors of trial counsel." *United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005). First, reading the quoted exchange in context, Lewis himself was clearly the party who stated that he and Brown were transporting the cocaine base to Tulsa. As this statement was offered against him at trial, it does not fall within the definition of hearsay and is admissible as substantive evidence of Lewis' possession of and control over the cocaine base in question. Fed. R. Evid. 801(d)(2)(A). Moreover, as the Tenth Circuit noted on direct appeal, "a review of the record indicates the evidence presented by the government overwhelmingly demonstrated Lewis' dominion and control over the separate quantities of cocaine base seized on February 9, and April 17, 2002." *Lewis*, 97 Fed. Appx. at 877. Accordingly, the Court finds that Lewis has failed to prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Finally, Lewis alleges that trial counsel was ineffective in failing to adequately investigate his case, call witnesses, or offer exculpatory witnesses. Most of Lewis' briefing on this point, and the majority of his testimony at the evidentiary hearing, concerned counsel's failure to subpoena Sherman Brown to testify at trial, to offer as evidence a notarized affidavit from Brown, attached to Lewis' Memorandum and Brief in Support, stating that "Herbert Lewis Jr. did not know anything about any dealings, possessions of, or the transporting of any drugs of any sort," or to call witnesses who Lewis asserts would have testified concerning similar statements that Brown

made during state court proceedings. The Court notes, however, that Lewis' appellate counsel, in his *Anders* brief, already raised on direct appeal the issue of "whether Lewis' trial counsel was ineffective for failing to present the testimony of Sherman Brown, who allegedly would have testified that Lewis knew nothing about the cocaine base seized during the traffic stop." *Lewis*, 97 Fed. Appx. at 877. After thoroughly reviewing the record, the Tenth Circuit concluded that this issue was without merit, stating:

> Although we typically decline to entertain ineffective assistance claims on direct appeal, we will address this claim in this case because the claim identified was rejected on the merits by the district court, does not merit further factual inquiry, and indeed is patently frivolous. Lewis' allegations that Brown would testify that [Lewis] knew nothing about the cocaine base seized during the traffic stop are contrary to Brown's post-arrest statements to law enforcement authorities and are belied by Lewis' post-arrest statements in which he admitted knowledge of and involvement with the cocaine base, as well as a videotape of the traffic stop that showed Lewis throwing the cocaine base out the window of the vehicle. *The decision by Lewis' trial counsel not to subpoena Brown to testify at trial was objectively reasonable and, in any event, did not prejudice Lewis*.

*Id*. at 877 (emphasis added) (citation omitted).

Given the Tenth Circuit's previous conclusion that counsel's decision not to subpoena Lewis to testify at trial was both objectively reasonable and not prejudicial, this Court will not revisit the matter on collateral review. Moreover, to the extent that Lewis could still challenge his counsel's failure to present the notarized affidavit at trial or to call witnesses to testify as to similar statements by Brown in his state court case, the Court fails to see how the failure to present such evidence or testimony at trial would be any less reasonable or more prejudicial. Accordingly, the Court finds this ground of Lewis' ineffective assistance claim to be without merit.

As part of his argument that counsel failed to adequately investigate the case or Lewis

observes that counsel failed to raise the past drug problems of Luther Stallings, the owner of the truck in whose bed law enforcement officials discovered the cocaine base giving rise to Count Two of the indictment. According to Lewis, "[s]ince Mr. Stallings was denying ownership of the drugs, his past could have been used by the defense attorney...to challenge the notion that the drugs found on Stallings' truck did not belong to Stallings." (Pet'rs Supp. at 2.) The Court notes, however, that this argument is premised solely upon Lewis' testimony during his evidentiary hearing that "[Stallings] was actually being watched for drugs." (Hr'g Trans. at 28.) Lewis does not identify any evidentiary support for his contention that "Mr. Stallings had past problems with drugs." (Pet'rs Supp. at 2.) Indeed, Lewis concedes that "[i]t is not known if Mr. Stallings has a criminal conviction relating to drugs, or if he just has a history of drug use." (*Id.*) In the absence of any identifiable and admissible evidence, other than Lewis own unsupported assertions, the basis of which remains unknown, of Stallings' alleged history of drug-related problems, the Court finds that Lewis has failed to prove that counsel was either ineffective in failing to raise this argument at trial or that counsel's failure to do so in any way prejudiced Lewis.

In addition, Lewis contends that "[h]ad defense counsel properly investigated the case, he would have realized that he should have objected any time mention was made of...[the] black scales that [were] allegedly found at the site of [Lewis'] initial arrest." (*Id.*) As Lewis notes, "[t]he discovery materials did not provide any photos of the scale...[and] [n]o scale was viewed or introduced at trial." (*Id.*) According to Lewis, "[t]his is important because, when one views the video tape, it is clear that something was thrown from the vehicle, but it is impossible to identify what was thrown." (*Id.*) As a result, Lewis argues that "[r]epeated mention that the digital scales [were] one of the items thrown, without any attempt to show the actual scales to the jury, could

only cause prejudice to [Lewis]." (*Id.* at 2-3.)

As the Government correctly points out, however, Lewis "has wholly failed to indicate how this testimony regarding a set of black scales would be prohibited." (Resp'ts Resp. Pet'rs Supp. at 2.) Indeed, nowhere in his briefing does Lewis identify any legal theory pursuant to which testimony concerning the scales would be inadmissible. Likewise, Lewis fails to identify how testimony concerning the digital scales could have been prejudicial to Lewis, when such testimony was tangential to the Government's primary case against Lewis. As a result, the Court finds that Lewis has failed to prove that counsel's failure to object to any mention of the black digital scales either falls outside "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, or prejudiced his defense.

Finally, having reviewed the briefing submitted by the parties, the Court has identified no other arguments raised by Lewis concerning trial counsel's alleged ineffectiveness establishing that "(1) counsel's performance was deficient, and (2) that this deficient performance prejudiced [Lewis'] defense, depriving him of a fair trial with a reliable result." *Orange*, 447 F.3d at 796. Accordingly, the Court finds that Lewis has failed to demonstrate his entitlement to relief pursuant to § 2255.

## <u>Conclusion</u>

For the reasons cited herein, Petitioner Herbert Lewis, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 1) is hereby DENIED.

IT IS SO ORDERED this 17th day of September, 2007.


James H. Payne
United States District Judge
Eastern District of Oklahoma